v.

The STATE of Oklahoma, Appellee.

No. J–88–303.

Court of Criminal Appeals of Oklahoma.

Oct. 5, 1988.

Rick Ault, Asst. Public Defender, Juvenile Div., Oklahoma City, for appellant.

Robert H. Macy, Dist. Atty., Oklahoma County, Mary H. Smith, Asst. Dist. Atty., Oklahoma City, for appellee.

## OPINION

BRETT, Presiding Judge:

Appellant, E.C., is a 17 year-old juvenile born August 20, 1970; he has been charged with the crimes of Burglary Second Degree, 21 O.S.1981, § 1435, JF–88–31; Burglary First Degree, 21 O.S.1981, § 1431, JF–88–279; and Robbery First Degree, 21 O.S.1981, § 791, JF–88–282 in Oklahoma County District Court. Appellant has been certified to stand trial as an adult. *See* 10 O.S.1981, § 1112. Appellant is not challenging the finding of prosecutive merit in JF–88–31, the Burglary Second Degree charge. He is, however, challenging the court's finding of prosecutive merit on the remaining two charges. Appellant is also questioning his certification to be tried as an adult which affects all three charges.

Appellant first came to the attention of the State when he was eleven years old. At that time, he was adjudicated a deprived child. On September 20, 1979, his mother, Sally Clayborn, had her parental rights terminated. His father is now deceased, but his parental rights were terminated in November of 1980. E.C. has been in ten different foster homes and two group living homes; at the time of his arrest, he was a runaway from the Speck Home, Inc. He was staying, without Department of Human Services permission, with his mother. On May 19, 1987, E.C. had been adjudged delinquent. He has a long history of leaving his foster homes without permission. He has never had a permanent placement in a secure facility.

■ Appellant's first claim of error deals with the undisputed fact that his natural mother, Sally Clayborn, was not served with a summons and a copy of the petition filed against him (*see* 10 O.S.1981, § 1132) but contends that she was entitled to notice nonetheless because he was staying with her when he was arrested, albeit without the permission of his legal guardian, the Department of Human Services. His argu-

ment is that the language of Section 1104 requires it. Section 1104 reads in part:

(a) After a petition shall have been filed, ... a summons shall be issued which shall recite briefly the nature of the proceeding ... and requiring the person or persons who have the custody or control of the child to appear personally and bring the child before the court at a time and place stated. The summons shall state the relief requested, and shall set forth the right of the child, parents and other interested parties to have an attorney present at the hearing on the petition.

(b) The summons shall be served on the person who has actual custody of the child.... If the person who has actual custody of the child shall be other than a parent or guardian of the child, a copy of the summons shall be served on the parent or guardian, or both, as hereinafter provided....

Appellant has cited no cases that are either on point or analogous in support of his interpretation, and we are not persuaded by this argument when only the language of the statute is considered.

Appellant's mother not only no longer had parental rights that had to be considered, but she was not his lawful temporary custodian. Other than appellant's personal rights to notice, the only other entity entitled to notice was the Department of Human Services. The court did not elect to designate anyone else to receive notice. 10 O.S.1981, § 1104. This being the case, we find no deficiencies in the due process afforded appellant.

■ In his second objection, appellant is advocating that the evidence of his fingerprints be suppressed due to the circumstances surrounding the acquisition of the exemplar that was used to connect appellant to the crimes. He acknowledges that his argument is one of first impression. Title 10 O.S.1981, § 1127 limits the state authorities' power to obtain and retain a juvenile's fingerprints, it provides in part as follows:

(b) If latent fingerprints are found during the investigation of an offense, a law enforcement officer may fingerprint a child for the purpose of comparing his fingerprints with the latent fingerprints, and the fingerprints may be sent to a law enforcement agency for comparison purposes only. If the comparison is negative or if the court finds that the child did not commit the alleged offense, the child's fingerprint card and all copies of his fingerprints shall be destroyed immediately after the juvenile proceeding is completed. If the court finds that the child committed the alleged offense, or if the commission of the offense is admitted or not contested by the juvenile and his parents pursuant to an informal adjustment, deflection or diversion of the referral, his fingerprints may be retained separate from the fingerprints of persons who are not under this chapter either in a central state depository or in a local district court file which local depository may be a duly constituted law enforcement agency or agencies designated by the presiding judge of the juvenile docket; provided that the presiding judge of the juvenile docket of the district court shall prescribe rules and regulations governing the acquisition, maintenance, release and utilization of such fingerprint cards, and provided further that the willful violation of such court prescribed rules and regulations shall constitute an act of contempt of court by the persons committing, or authorizing the act or omission constituting the violation, or supervising the fingerprinting operation. Fingerprints obtained and maintained pursuant hereto may be used only by law enforcement officers for comparison purposes in connection with the investigation of a crime or to establish identity in instances of death, serious illness, runaways, or emergency. No rule or regulation of any court or judge thereof made pursuant to the authority herein vested shall operate to impair the generation, maintenance or utilization of juvenile fingerprints for the purposes herein authorized.

\*    \*    \*    \*    \*    \*

(d) Subsections (a) and (b) of this section shall not apply to the use, confidentially and disposition of the records and fingerprints of a person who is sixteen (16) or seventeen (17) years old and charged with one of the crimes enumerated in Section 1104.2 of this title.

Appellant claims the exemplar that was used to provide the probable cause for his arrest was obtained in an unrelated investigation that did not end in a conviction in 1986. He claims that that fingerprint card was retained without any of the prerequisites of the statute having been met for retention and therefore could not be used. He cites the United States Supreme Court case of *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) and is claiming this situation falls under the "fruit of the poisonous tree" prohibition. *See also Lucas v. State,* 704 P.2d 1141 (Okl.Cr.App.1985). At this hearing, however, the State established a set of facts surrounding the acquisition of a second exemplar and denied the first card was the triggering factor in the charges being filed. The State called a police officer who was involved with the investigation of this crime. He testified that while appellant was lawfully in detention on another matter, and after they had already been focusing on him due to a phone call from a reliable informant, they obtained the exemplar that was used to compare with the latent prints. The second prints resulted in a positive identification, and it was after that that appellant was charged with this crime and arrested.

The presumably improper retention of appellant's 1986 fingerprint card is merely a collateral fact, not one that will defeat the lawful investigative efforts that resulted in the acquisition of a legitimate set of fingerprints and a valid comparison. We find the evidence was lawfully obtained. Appellant's arrest was also proper since it was based on viable and lawfully obtained evidence that connected him to the crime. Whether this is a case of "inevitable discovery" or a straight forward case of a lawful chain of events paralled by an unlawful occurrence, we do not find in appel-

lant's favor on this issue. *See Dyke v. State,* 716 P.2d 693, 696 (Okl.Cr.App.1986).

The next issue raised by appellant is a challenge to the court's finding of prosecutive merit. He does not question the finding that a crime was committed but only that if the fingerprint evidence is suppressed that there is insufficient evidence to connect appellant to the crime. Since our holding on the fingerprint evidence did not favor appellant, this proposition is conceded by him.

■ In his final proposition, appellant asserts that the trial court abused its discretion in finding that he was not amenable to rehabilitation and should be certified to stand trial as an adult.

In examining appellant's position in regard to the criteria set out in 10 O.S.1981, § 1112(b), we find the following acts of violence. The victims were a couple in their late seventies, and in an act of charity, allowed appellant's partner, a man in his late twenties, into their home to use the phone. Both people were injured. Although the injuries were inflicted primarily by appellant's partner, appellant was present during most of the violence. All four elements of Section 1112(b)(1) to-wit: aggression, violence, premeditation and willfulness were present. The crimes involved both persons and property which resulted in both personal injury and property damage. An expert, who evaluated appellant's ability to distinguish right from wrong, testified he had the capacity to distinguish between these concepts although he is not sophisticated. Appellant's home life has been a series of foster homes and group homes. He was first adjudicated a delinquent in January of 1987, and since then he has been cited with seven felony level offenses including the three in this matter. The ultimate assessment by the expert was that appellant has a "fair" chance of rehabilitation. This Court takes this evaluation of "fair" to be inconclusive with a negative connotation. Considering the nature of the crimes and appellant's history of running away from his placement homes, we find the trial court did not rule erroneously by finding appellant

should be certified to be tried as an adult. *See Trolinger v. State,* 736 P.2d 168 (Okl. Cr.App.1987).

For the foregoing reasons, the order appealed from is AFFIRMED.

BUSSEY, J., concurs.

PARKS, J., specially concurs.

PARKS, Judge, specially concurring:

I concur in Judge Brett's opinion, but wish to clarify my position regarding 10 O.S.1981, § 1104(b), which states in relevant part: "The summons *shall* be served on the person who has *actual custody* of the child...." (emphasis added) The word "shall" makes this provision mandatory. *Nickell v. State,* 746 P.2d 1155, 1158 (Okla.Crim.App.1987). "Actual custody" is not defined in Section 1104, or elsewhere and, absent a statutory definition, we must assume the Legislature intended it to be understood in the ordinary sense. 25 O.S. 1981, § 1; *Glass v. State,* 701 P.2d 765, 768 (Okla.Crim.App.1985).

The term "actual custody" is ambiguous, and susceptible to differing interpretations. Was it intended to mean the person having legal custody or the person with whom the juvenile is residing or something else? *Cf.* Kan.Stat.Ann. § 38–1626(a) (1983) (summons and complaint shall be served on juvenile, the parent(s) having legal custody, the person with whom the juvenile is residing, and any other person designated by prosecutor). The Oklahoma Legislature would do well to define this term to make its intent clear. Section 1104(b) is designed to provide written notice to the parent, guardian, or person having custody or control of the juvenile, sufficiently in advance of the hearing to permit preparation. *See Crandell v. State,* 539 P.2d 398, 401 (Okla. Crim.App.1975). In the landmark case of *In re Gault,* 387 U.S. 1, 33–34, 87 S.Ct. 1428, 1447, 18 L.Ed.2d 527 (1967), writing for the Court, Justice Abe Fortas wrote: "Due process ... does not allow a hearing to be held in which a youth's freedom and his parents' right to his custody are at stake without giving them timely notice, in advance of the hearing, of the specific issues that they must meet." Appellant's father is deceased, and his mother's parental rights were terminated. Thus, unlike *Gault,* there is no question of parental rights here.

The majority holds that appellant was not in the "actual custody" of his natural mother within the meaning of Section 1104(b), because (1) the natural mother's parental rights were terminated in 1979, and (2) she was not appellant's lawful temporary custodian. *Majority,* at 133. This holding is reasonable and proper under the circumstances. The term "custody" implies responsibility for the care and control of a person. *See Black's Law Dictionary* 347 (5th ed. 1979). The record does not support a finding that the natural mother was responsible for the care and control of E.C., but rather that appellant was a runaway from a foster home and had been staying with his mother for an unknown period of time without the consent of the Department of Human Services, which was responsible for his care and control. The prior termination of appellant's natural mother's parental rights destroyed any legal right or responsibility she previously had for the custody or control of E.C. *See* 10 O.S.1981, § 1132.

Finally, I would emphasize that our holding is limited to the facts of this case, and would not necessarily extend to approve lack of notice to a person who has lawfully assumed substantial responsibility for the care or control of a juvenile. Based on the foregoing, I concur.